UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

F I L E D

Date ____5/10/17____

CLERK, U.S. DISTRICT COURT          Time
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

ARTHUR N. RAGUSA,
SANDRA RAGUSA,
JOSEPH C. HATCHER, and
ROSEMARY S. HATCHER,

CASE NO.:
6:17-cv-842-ORL-37DCI

Plaintiffs,

vs.                                       **CLASS ACTION**

BALI CONDOMINIUM
ASSOCIATION, INC.,
PARKWAY INTERNATIONAL
OWNERS ASSOCIATION, INC.,
DIAMOND RESORTS
INTERNATIONAL, INC., and
RSM US LLP.

Defendants.

_____/

## CLASS ACTION COMPLAINT

The Plaintiffs, ARTHUR N. RAGUSA, SANDRA RAGUSA, JOSEPH C. HATCHER,

and ROSEMARY S. HATCHER (hereinafter, collectively, "Plaintiffs") hereby sue the

Defendants, BALI CONDOMINIUM ASSOCIATION, INC., PARKWAY INTERNATIONAL

OWNERS ASSOCIATION, INC., DIAMOND RESORTS INTERNATIONAL, INC., and RSM

US LLP.

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff ARTHUR N. RAGUSA is an individual residing in the state of

Massachusetts, and who is an owner of a timeshare interest and thereby a member of the Defendant

BALI CONDOMINIUM ASSOCIATION, INC. (hereinafter, the "Bali Association"), which is

located in Osceola County, Florida.

1

2.     Plaintiff SANDRA RAGUSA is an individual residing in the state of Massachusetts, and who is an owner of a timeshare interest and thereby a member of the Defendant Bali Association, which is located in Osceola County, Florida.

3.     Plaintiff JOSEPH C. HATCHER is an individual residing in the state of Kentucky, and who is an owner of a timeshare interest and thereby a member of the Defendant PARKWAY INTERNATIONAL OWNERS ASSOCIATION, INC., (hereinafter, "Parkway") which is located in Orange County, Florida.

4.     Plaintiff ROSEMARY S. HATCHER is an individual residing in the state of Kentucky, and who is an owner of a timeshare interest and thereby a member of the Defendant Parkway, which is located in Orange County, Florida.

5.     Defendant BALI ASSOCIATION is a Florida non-profit corporation existing under the laws of the State of Florida, with its principal place of business located at 17777 Bali Blvd., Winter Garden, FL 32787, and is an owners' association as defined by Chapter 718, Florida Statutes.

6.     Defendant PARKWAY is a Florida non-profit corporation existing under the laws of the State of Florida, with its principal place of business located at 6200 Safari Trail, Kissimmee, FL 34746, and is an owners' association as defined by Chapter 718, Florida Statutes.

7.     Defendant DIAMOND RESORTS INTERNATIONAL, INC. (hereinafter, "DRI" or "Diamond") is a Nevada for profit corporation existing under the laws of the State of Nevada, with its principal place of business located at 10600 W Charleston Blvd, Las Vegas, NV 89135 that, itself and through its affiliates and subsidiaries, has offices in the State of Florida and owns timeshare resorts located throughout the State of Florida, regularly sells timeshare interests to consumers in the State of Florida, and serves as the managing entity for the timeshare resorts and

interests it sells. As the managing entity, Defendant DRI has responsibility for assessing and collecting fees in relation to the maintenance and management of timeshare developments.

8.       Defendant RSM US LLP (hereinafter, "RSM") is the respective Certified Public Accountant for each Association, which separately performed the respective audits for each timeshare development where each respective Plaintiff and Class Members owned a timeshare unit.

9.       All conditions precedent to the bringing of this action have either occurred or have been excused by the Defendants.

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy, exclusive of interest and costs, exceeds the sum of value of $5,000,000 and is a class action in which Plaintiffs and members of the Class are citizens of a state different from Defendants.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this District because one or more of the Defendants:

a.       are authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the distribution and sale of its products in this District;

b.       do substantial business in this District; and

c.       are subject to personal jurisdiction in this District.

## NATURE OF THE CASE

12.     This is an action against all Defendants seeking damages as well as declaratory and injunctive relief in favor of Plaintiffs and a class of similarly situated timeshare owners of resorts

3

owned and operated by Defendant DRI where DRI serves as the managing entity of these resorts, and acting in concert with each of the Defendants, has improperly imposed and collected so-called "Indirect Corporate Costs," which were, and continue to be, unjustly charged to Plaintiffs and class members. In this action, Plaintiffs seek relief for themselves and class members for Defendants' breaches of fiduciary duty, breaches of contract, and with respect to Defendant RSM, professional negligence.

13.     Taking advantage of outdated and ambiguous contract language contained in the governing documents for the resorts owned by DRI, each of the Defendants, by and through the managing entity, have surreptitiously charged, and profited from charging, costs that are unrelated to the maintenance and management of the timeshare development to timeshare owners, including Plaintiffs and class members, on a pro rata basis via a so-called "Indirect Corporate Cost" fee.

14.     Plaintiffs and class members are "Purchasers" as defined in Fla. Stat. § 721.05(30).

15.     Defendant Bali Association is an "Owner's Association" as defined in Fla. Stat. § 721.05(27).

16.     Defendant DRI is a "Developer" as defined in Fla. Stat. § 721.05(10).

17.     At all times herein, Defendant Parkway is an "Owner's Association" as defined in Fla. Stat. § 721.05(27).

18.     At all times herein, Defendant Island One is a "Developer" as defined in Fla. Stat. § 721.05(22).

19.     At all times herein, Defendants Bali and Parkway have acted and continue to act, separately and respectively, as a "Managing Entity" under Fla. Stat. § 721.13(b)(1) and Fla Stat. § 721.13(c).

4

20.    There exists "Contracts" as that term is defined in Fla. Stat. § 721.05(9) between Plaintiffs and Class members and Defendants.

21.    The alleged "Assessment" as defined in Fla. Stat. § 721.05(4) and the "Common Expenses" as defined in Fla. Stat. § 721.05(6) are the subject matter of this complaint.

22.    Plaintiffs allege that the Assessment required of them and class members is in excess of what is permissible under Florida Statutes and of what was bargained for, agreed upon and contemplated between the parties at the time of purchase.

23.    Plaintiffs further allege that the charges billed by Defendants, allegedly for maintenance, exceed necessary and proper maintenance fees amounts and include non-maintenance and non-resort related expenditures improperly categorized as maintenance expenses via the line item "Indirect Corporate Costs" and/or alternatively classed under a different category.

24.    As a result, Plaintiffs and class members have been harmed by Defendants' willful and grossly negligent acts of permitting a substandard audit which imposed fees to be charged to Plaintiffs under the guise of Maintenance Fees which have no relation to the maintenance of the respective timeshare developments.

25.    As expressly provided by the Fifth Amendment to the Declaration of Condominium for Bali International Resort Club, among other governing documents, the "maintenance fee shall include the following items, if applicable: The Unit's share of common expenses, as set forth in Paragraph VIII, above; Repair and upkeep of the Unit for normal wear and tear; Repair and replacement of furniture, fixtures, appliances, carpeting and utensils; Casualty and/or liability insurance on the Unit; Utilities for the subject Unit; Any other expenses incurred in the normal operations maintenance of the Unit which cannot be attributed to a particular Week Owner."

(Exhibit A, *Fifth Amendment to Declaration of Condominium*, XXV excerpt from *Declaration of Condominium*).

26.    The indirect corporate cost does not qualify as any of these explicitly stated charges.

27.    The inclusion of a non-maintenance related fee directly benefits each respective management company because based upon the calculation of the management fee, all parties are incentivized to make the maintenance fees higher.

28.    The management company's fee is calculated by charging a 15% fee to manage the resort based on the total value of costs spent by the management company, which in turn is passed to timeshare owners as the annual maintenance fees. Thus, the greater the maintenance fee charges, the greater the calculation of the 15% fee.

29.    As a result, Defendants have profited, and continue to profit, to the detriment of Plaintiffs and Class Members from their violations of their fiduciary duties.

## BACKGROUND OF THE CASE

30.    On or about February 9, 1982, The Davenport Corporation incorporated Defendant Bali International Resort Club as well as Defendant Bali Condominium Association, Inc.

31.    The collaborative purpose of these corporations was to develop, sell and manage a timeshare development in Osceola County, Florida by which The Davenport Corporation and its principals endeavored to earn profits.

32.    The Davenport Corporation drafted the operative documents for the management and operation of the timeshare development, namely the Declaration of Covenants, Conditions and Restrictions, the By-laws, the Articles of Incorporation and the Management Agreement.

33.    These documents were in force at the time The Davenport Corporation, by and through its affiliated entities and employees, began soliciting timeshare sales at the development.

6

34.     Many of the terms and conditions contained in these documents are ambiguous and unconscionable to the extent that they purport to permit **any** charge, whether or not that charge pertains to the maintenance or betterment of the development, to be charged within the maintenance fee.

35.     Island One, Inc. operating previously under the name of Galaxy Group Management Corporation, entered into a nearly identical Management Agreement with Defendant Bali in 1987. (See Exhibit B).

36.     Island One, Inc. operating as Galaxy utilized ambiguous and favorable language present in the Management Agreement, the Declaration of Covenants, Conditions and Restrictions, the By-laws and other governing documents, to include their subsequent amendments to carry out the systemic overcharging of timeshare owners at its development.

37.     Island One, Inc. sold its management contracts, unsold vacation ownership interests, a portfolio of consumer loans and other assets to Defendant Diamond on or about July 24, 2013.

38.     As such, Diamond became the management company for Bali and Parkway as a result of the acquisition.

39.     The language present in the governing documents for these entities is ambiguous or over-reaching so as to purport to permit unlimited spending without proper checks and balances and are written in such a way to attempt to avoid liability for breaches of fiduciary duties between one or all of the Defendants and timeshare owners.

40.     By using this outdated language from the 1982 and 1987 governing documents, coupled with subsequent amendments spanning over a thirty-year period, as well as a

Supplemental Declaration which materially changes the rights of owners, Defendants leave terms in force which adversely affect owners to each Defendant's respective financial benefit.

41.     Examples of language that work in conjunction to permit and enable unchecked spending and charges to timeshare owners are found throughout the governing documents as referenced herein.

42.     Specifically, one such egregious example is found in the Declaration, as the Directors and Officers of the Association believe themselves able to enter into any such contract or agreement as they wish, as expressly stated in the Declaration of Condominium in Article XVII, Section G: "the Association may enter into an agreement with such firms or companies as it may determine to provide certain services and/or maintenance for and on behalf of the Unit Owners…and the assessments due from each Unit Owner for common expenses shall be increased *by such sum as the Association deems fair and equitable.*" (Exhibit C, excerpt from *Declaration of Condominium,* Article XVII, Section G. (emphasis added)

43.     The language referenced in paragraph 40 of this Complaint purports to permit the Directors and Officers of the Association to unilaterally permit the assessment of any fee by any amount as determined to be "fair and equitable" according to the Directors and Officers in their sole discretion.

44.     Further, the By-laws of the Association continue diluting the rights of the Unit Owner by using catch-all language to further attempt to remove the Directors and Officers from incurring any liability from their decisions pursuant to the amounts of assessments and fees.

45.     Article XI, Section 4 of the By-laws expressly provides that "Common expenses shall include expenses for the operation, maintenance, repair or replacement of the Common Elements and Limited Common Elements, costs of carrying out the powers and duties of the

Association...**and any other expenses designated as common expenses from time to time by the Board of Directors of the Association, or under the provisions of the Declaration**." (Exhibit D, excerpt from *By-laws*, Article VI, Section 4(a)). (emphasis added)

46.     Further, according to the By-laws, Section 11 provides that "subject to the provisions of Section 718.301, of the Condominium Act, the Developer shall have the right to designate the Directors who need not be Owners of Units or Unit Weeks in the Condominium, and said Directors may not be removed by members of the Association, as elsewhere provided herein; and where a vacancy occurs for any reason whatsoever, the vacancy shall be filled by the person designated by the Developer." (Exhibit E, excerpt from *By-laws*, Article II, Section 11, pg. B-5, B-6).

47.     As such, Defendants, each in their respective roles as successive Developer, Managing Entities, and Associations of the timeshare development, and believing themselves able to act with complete immunity, have implemented and approved a so-called "Indirect Corporate Cost," among other costs and fees, which is improperly accounted for, and which breaches their fiduciary duties to Plaintiffs and those similarly situated by permitting unearned, inflated costs to be passed through to Unit Owners, while purporting to contractually disallow Unit Owners any explanation or recompense.

48.     This inflated fee is then used in a calculation to pay the management companies higher fees due to the 15% fee calculation based upon the total amount charged.

49.     As such, charging more fees and hiding inappropriate fees, directly benefits Defendants by inflating the management fee they are each paid.

50.     Plaintiffs further allege that Defendants co-opt the statutorily-mandated independence of the Board of Directors of the Associations by inserting onto the Board of

Directors various insiders, or otherwise willing actors, with whom the Defendants have a preexisting relationship.

51.     These Directors and Officers are likely employees of Defendant Diamond, ex-employees of Defendant Diamond, or otherwise aware and complicit in Defendant Diamond's and Defendant Island One's schemes.

52.     In coordination with each other, each Defendant has breached its fiduciary duty respective to each Plaintiff and putative class member by not acting in the Unit Owners' best interests, while profiting from its self-serving decisions, contracts and agreements.

### *Plaintiffs, Joseph and Rosemary Hatcher*

53.     On or about July 4, 2013, Plaintiffs, Joseph and Rosemary Hatcher (collectively "Hatchers"), entered into a valid contract (hereinafter, "Purchase Contract") where the Hatchers agreed to purchase a Diamond timeshare interest. Please see attached a true and correct copy of said Purchase Contract labeled as Exhibit F.

54.     Under this Purchase Contract, the Hatchers are purportedly responsible to pay maintenance fees which inure to the benefit or operation of Parkway.

55.     The Purchase Contract does not contain the definition of Maintenance Fee, Assessment, or Common Expenses.

56.     Florida Statutes Section 721.05(4) defines an Assessment as a share of funds required for the payment of common expenses which is assessed from time to time against each purchaser by the managing entity . . ." (emphasis added).

57.     Florida Statutes Section 721.05 (35) declares that the "Timeshare Instrument" means one or more documents, by whatever name denominated, creating or governing the operation of a timeshare plan."

58.     These documents referenced in allegation #55 include the declaration of covenants, the articles of incorporation, bylaws, and any rules and regulations adopted under the authority of the declaration, articles of incorporation, or bylaws.

59.     On or about September 16, 2016, the Hatchers, as members of Parkway, received a letter from Defendant Diamond with the 2017 Yearly Budget for Parkway International Owners Association, Inc. Please see attached a true and correct copy of said letter labeled as Exhibit G.

60.     The Maintenance Fee are accounted for in the Hatchers' 2017 Yearly Budget, i.e., the 2017 yearly budget contains a line item for "Maintenance" and another for "grounds", which both correspond with a valid category of repair and upkeep of wear and tear.

61.     The line item "Indirect Corporate Cost" does not correspond to any of the valid categories of a Maintenance Fee found in the Governing Documents. Thus, the line item Indirect Corporate Cost is an improper charge included in the Maintenance Fee because an Indirect Corporate Cost is a non-maintenance related fee or assessment as defined by the Governing Documents.

62.     Defendants' inclusion of Indirect Corporate Costs is an attempt to shift various corporate, management, and/or overhead costs and expenses to Plaintiffs, disguising them as Maintenance Fees.

63.     The crux of these allegations is that Defendants are shifting non-maintenance related fees to Plaintiffs via the line item "Indirect Corporate Costs", which consequently permits Diamond to pass through fees unrelated to the maintenance of the timeshare development to the owners on a pro rata basis.

64.     The inappropriate charges hidden in the "Indirect Corporate Costs" of the budget in turn inflates the management fee which the managing entities are each to earn.

65.    In the year 2016, the Hatchers received a letter from Defendants Parkway's Maintenance Fee Department and from Diamond, which included Parkway's 2017 Budget. This letter is an attempt to collect the debt and the check is to be made payable to Defendant Parkway. Please see attached a true and correct copy of said letter labeled as Exhibit H.

66.    The 2017 Budget contains a line item entitled "Indirect Corporate Costs" with a total of $163,427 for the year 2016. See Exhibit H.

67.    Class Members as other similarly situated Diamond and Parkway International timeshare owners have also been charged with a non-maintenance related fee disguised as Indirect Corporate Costs.

68.    Defendants are imposing charges on the Hatchers under the pretext of "Indirect Corporate Costs" which are not related to the operation of the property, nor are properly categorized "maintenance fees."

69.    Defendants are disguising other unrelated costs and charging them to Plaintiffs in the form of so-called Maintenance Fees.

70.    Defendants are disguising numerous and often duplicated expenses under the pretext of "Indirect Corporate Costs" and charging them to Plaintiffs in the form of so-called Maintenance Fees.

### *Plaintiffs, Arthur and Sandra Ragusa*

71.    On or about July 7, 2009, Plaintiffs Arthur and Sandra Ragusa (collectively "Ragusas") entered into a valid contract (hereinafter, "Purchase Contract") with Island One where Plaintiffs agreed to purchase a timeshare interest. Please see attached a true and correct copy of said Purchase Contract labeled as Exhibit I.

72.     The Purchase Contract does not contain the definition of Maintenance Fee, Assessment, or Common Expenses.

73.     Florida Statutes Section 721.05(4) defines an Assessment as a share of funds required for the payment of common expenses which is assessed from time to time against each purchaser by the managing entity . . ." (emphasis added).

74.     Florida Statutes Section 721.05 (35) declares that the "Timeshare Instrument" means one or more documents, by whatever name denominated, creating or governing the operation of a timeshare plan."

75.     These documents referenced in allegation #72 include the declaration of covenants, the articles of incorporation, bylaws, and any rules and regulations adopted under the authority of the declaration, articles of incorporation, or bylaws.

76.     Bali's Declaration of Condominium defines Common Expenses as ". . . expenses for which the Unit Owners are liable to the Association." Please see attached true and correct excerpts of said Declaration of Condominium labeled as Exhibit J.

77.     The Declaration defines Assessment as ". . . a share of the funds required for the payment of common expenses which, from time to time, are assessed against Unit Owners." Please see attached true and correct excerpts of said Declaration labeled as Exhibit J.

78.     The Declaration defines Management Agreement as ". . . Agreement attached to this Declaration and made a part hereof, which provides for the management of the Condominium Property." Please see attached true and correct excerpts of said Declaration labeled as Exhibit J.

79.     The Declaration defines Maintenance Fee as ". . . share of the funds required for the payment of those expenses **associated with a Unit committed to Interval Ownership**, which,

from time to time, are assessed against the Owners of Unit Weeks within such Unit." Please see attached a true and correct copy of said Declaration labeled as Exhibit J. (emphasis added)

80. The Declaration specifies that Maintenance Fee includes the following: (1) The Unit's share of common expenses; (2) Repair and upkeep of the Unit for normal wear and tear (example – repainting interior walls); (3) Repair and replacement of furniture, fixtures, appliances, carpeting and utensils; (4) Casualty and/or liability insurance on the Unit; (5) **Any other expenses incurred in the normal operations and maintenance of the Unit which cannot be attributed to a particular Unit Week Owner**." Please see attached a true and correct copy of said Declaration labeled as Exhibit J.

81. The above-mentioned inclusions in the Maintenance Fee are accounted for in Plaintiffs' 2017 Yearly Budget, i.e., the 2017 yearly budget contains a line item for "Maintenance" and another for "grounds", which both correspond with a valid category of repair and upkeep of wear and tear.

82. The line item "Indirect Corporate Cost" does not correspond to any of the valid categories of a Maintenance Fee found in the Governing Documents. Thus, the line item Indirect Corporate Cost is an improper charge included in the Maintenance Fee because an Indirect Corporate Cost is a non-maintenance related fee or assessment as defined by the Governing Documents.

83. Defendants' inclusion of Indirect Corporate Costs is an attempt to shift various corporate, management, and/or overhead costs and expenses to Plaintiffs, disguising them as Maintenance Fees.

84. The crux of these allegations is that Defendants are shifting non-maintenance related fees to Plaintiffs via the line item "Indirect Corporate Costs", which consequently permits

Diamond to pass through fees unrelated to the maintenance of the timeshare development to the owners on a pro rata basis.

85.     The inappropriate charges hidden in the "Indirect Corporate Costs" of the budget in turn inflates the management fee which the managing entities are each to earn.

86.     In the year 2015, the Ragusas, as interest owners and members of Bali, received a letter from Defendants Bali's Maintenance Fee Department and from Diamond which included Bali's 2016 Budget. This letter is an attempt to collect the debt and the check is to be made payable to Defendant Bali. Please see attached a true and correct copy of said 2016 Budget labeled as Exhibit K.

87.     The 2016 Budget contains a line item titled "Resort Management" under the Operating Expenses category for a total of $210,424. See Exhibit K.

88.     In the year 2016, the Ragusas, as interest owners and members of Bali, received a letter from Defendants Bali's Maintenance Fee Department and from Diamond which included Bali's 2017 Budget. This letter is an attempt to collect the debt and the check is to be made payable to Defendant Bali. Please see attached a true and correct copy of said letter labeled as Exhibit L.

89.     The 2017 Budget did not have the line item titled "Resort Management" under the Operating Expenses category. Instead, it contains a line item entitled "Indirect Corporate Costs" with a total of $210,424 for the year 2016, the same amount which had previously been referred to as "Resort Management." See and compare Exhibit K and Exhibit L.

90.     Class Members as similarly situated timeshare owners have also been charged with a non-maintenance related fee disguised as "Indirect Corporate Costs."

91.     Defendants are imposing charges on the Hatchers, the Ragusas, and putative class members under the pretext of "Resort Management" and/or "Indirect Corporate Costs" which are not related to the operation of the property, nor are properly categorized "maintenance fees."

92.     Defendants are disguising other unrelated costs and charging them to Plaintiffs and putative class members in the form of so-called Maintenance Fees.

93.     Defendants are disguising numerous and often duplicated expenses under the pretext of "Indirect Corporate Costs" and charging them to Plaintiffs and putative class members in the form of so-called Maintenance Fees.

## CLASS ACTION ALLEGATIONS

### Class Definition

94.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of herself and the Class consisting of all owners of timeshare resorts where Defendant DRI serves as the managing entity from four years prior to the date of the filing of this Complaint to present (the "Class").

95.     Excluded from the Class are Defendants and any officer, director, employee, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

### Numerosity

96.     Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable.

97.     While the exact number of Class members remains unknown at this time, upon information and belief, there are thousands, if not tens of thousands, of putative Class members.

## Predominance of Common Questions of Law and Fact

98.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a.    Whether each of the Defendants have charged and profited from charging, costs that are unrelated to the maintenance and management of the timeshare development to timeshare owners, including Plaintiffs and class members, on a pro rata basis, via a so-called "Indirect Corporate Cost" fee;

b.    Whether Plaintiffs and class members are "Purchasers" as defined in Fla. Stat. § 721.05(30).

c.    Whether Defendant Bali Association is an "Owner's Association" as defined in Fla. Stat. § 721.05(27).

d.    Whether Defendant DRI is a "Developer" as defined in Fla. Stat. § 721.05(10).

e.    Whether Defendant Parkway is an "Owner's Association" as defined in Fla. Stat. § 721.05(27).

f.    Whether Defendant Island One is a "Developer" as defined in Fla. Stat. § 721.05(22).

g.    Whether Defendants Bali and Parkway have acted and continue to act, separately and respectively, as a "Managing Entity" under Fla. Stat. § 721.13(b)(1) and Fla Stat. § 721.13(c).

h.    Whether there exist "Contracts" as that term is defined in Fla. Stat. § 721.05(9) between Plaintiffs and Class members and Defendants.

i.   Whether the alleged "Assessment" as defined in Fla. Stat. § 721.05(4) and the "Common Expenses" as defined in Fla. Stat. § 721.05(6), which are the subject matter of this complaint, are in excess of what is permissible under Florida Statutes and of what was bargained for, agreed upon and contemplated between the parties at the time of purchase;

j.   Whether the charges billed by Defendants, allegedly for maintenance, exceed necessary and proper maintenance fees amounts and include non-maintenance and non-resort related expenditures improperly categorized as maintenance expenses via the line item "Indirect Corporate Costs" and/or alternatively classed under a different category;

k.   Whether, as result, Plaintiffs and class members have been harmed by Defendants' willful and grossly negligent acts of permitting a substandard audit which imposed fees to be charged to Plaintiffs under the guise of Maintenance Fees which have no relation to the maintenance of the respective timeshare developments;

l.   Whether the inclusion of a non-maintenance related fee directly benefits each respective management company because based upon the calculation of the management fee, all parties are incentivized to make the maintenance fees higher;

m.   Whether the management company's fee is calculated by charging a 15% fee to manage the resort based on the total value of costs spent by the management company, which in turn is passed to timeshare owners as the annual maintenance fees;

18

n.  Whether, as a result. Defendants have profited, and continue to profit, to the detriment of Plaintiffs and Class Members from their violations of their fiduciary duties;

o.  Whether Plaintiff and the Class have sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such damages; and

p.  Whether Plaintiff and Class members are entitled to injunctive and other equitable relief.

### Typicality

99.  Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs and all Class members own a timeshare interest at a resort managed by Defendant DRI and have been charged "Indirect Corporate Costs" in violation of law as described herein.

### Adequacy

100.  Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. Plaintiffs have retained counsel who are competent and experienced in handling class-action litigation.

### Superiority

101.  A class action is superior to other available methods for the fair and efficient adjudication of the Class claims herein asserted because:

a.  joinder of the tens of thousands (or hundreds of thousands) of Class members is impracticable;

b.  individual claims by the Class are impractical because the cost of pursuing individual claims could exceed the value of what each Class member has at stake, such that individual Class members have neither the interest in, or the ability to, prosecute and control separate actions; and

c.    the interests of justice will be best served by resolving the common disputes

of potential Class members in this single, competent forum.

102.    There will be no difficulty in the management of this action as a class action.

### COUNT I
### BREACH OF FIDUCIARY DUTY
### Violations of Chapter 721, Florida Statutes
### As Against Defendants Bali Condominium Association, Inc. and
### Parkway International Owner's Association

103.    Plaintiffs hereby realleged paragraphs 1 through 99 as if specifically set forth.

104.    At all times material and as is more fully alleged in the preceding paragraphs,

Defendants were acting as fiduciaries to Plaintiffs and Class Members.

105.    Defendants are required to act in the capacity of a fiduciary to Plaintiffs and Class

Members per Florida Statutes Section 721.13(2)(a), Section 721.13(1)(b)(1) and 721.13(1)(b)(2),

721.13(3)(d)(1) and 721.13(4)(e).

106.    Each Defendant Owner's Association respectively breached its fiduciary duty of

full disclosure owed to Plaintiffs and Class Members by causing a substandard accounting to occur

which does not fully apprise Plaintiffs of the underlying charges passed through to them by the so-

called maintenance fee.

107.    Further, each Defendant Owner's Association, by and through its Board of

Directors, breached its duty of loyalty to Plaintiffs and Class Members by causing these additional

charges to be passed through to Plaintiffs and Class Members.

108.    Defendants also breached various fiduciary duties by permitting these inappropriate

charges to be utilized in the calculation of the 15% of gross charges payable to the management

company, which is a cost directly benefiting the managing entities and others.

109.     These fiduciary duties are expressly provided by statute and by virtue of the Management Agreement, the Declaration of Covenants, Conditions and Restrictions, the supplements and amendments thereto and the articles and bylaws of the association.

110.     As a fiduciary duty existed between Defendants and Plaintiffs and Class Members, Defendants owed a series of duties to Plaintiffs and Class Members to include the duties of loyalty, fidelity, honesty, candor, fair dealing and full disclosure.

111.     Plaintiffs and Class Members and Defendants share a fiduciary relationship whereby (a) Plaintiffs and Class Members trust the management and accounting of the timeshare to Defendants, and (b) Defendants undertake such trust and assume a duty to advise, counsel and/or protect Plaintiffs and Class Members.

112.     Defendants breached their duties to Plaintiffs and Class Members by charging Plaintiffs and Class Members, among other improper fees and costs, "Resort Management" or "Indirect Corporate Costs" under the pretext that said costs are related to the Maintenance Fees charged to and paid by Plaintiffs.

113.     These "Resort Management" or "Indirect Corporate Costs" fees are not ordinarily necessary or proper resort maintenance fees nor do they fall under the valid categories by the Governing Documents.

114.     Defendants did not act in a reasonable manner in permitting the substandard audit and for submitting such fees to the auditor for approval to be billed to Plaintiffs and Class Members.

115.     Further, if these so-called expenses are a form of management fee, then they exceed the maximum management fees that can be charged per the management contract in place between

Defendants and, therefore, contractually cannot be imposed upon Plaintiffs and Class Members nor any other interest owner.

116.    Defendants breached their duties to Plaintiffs and Class Members by disguising unrelated costs and charging them to Plaintiffs.

117.    Defendants' breach caused Plaintiffs and Class Members to suffer damages, namely, all amounts paid as Indirect Corporate Costs or Resort Management fees by Plaintiffs.

118.    Defendants' actions were also self-serving and acted in interests contrary to those of the members of each association.

119.    As a proximate and direct result of Defendants' breaches of these fiduciary duties owed to members of the association, Plaintiffs and Class Members have suffered damages which have accrued and continue to accrue.

120.    Defendants' breaches of the fiduciary duties existing between the plaintiffs and each defendant were further in bad faith, abusive, in reckless disregard of Plaintiffs' and Class Members' rights and intentionally done by Defendants for their own financial gain.

**COUNT II**
**Breach of Fiduciary Duties**
**Violations of Chapter 721, Florida Statutes**
**As Against the Boards of Directors for Defendant Bali Condominium Association, Inc. and Parkway International Owner's Association**

121.    Plaintiffs hereby reallege paragraphs 1 through 99 as if specifically set forth.

122.    At all times material and as is more fully alleged in the preceding paragraphs, Defendants were acting as fiduciaries to Plaintiffs and Class Members in their respective capacities as a Board of Directors.

123.    Each Defendant Board of Directors is required to act in the capacity of a fiduciary to Plaintiffs and Class Members per Sections 721.13(2)(a), 721.13(3)(d)(1), 721.13(4)(e) and 721.13(5) of the Florida Statutes.

124.    These fiduciary duties are also expressly provided by the Management Agreement, the Declaration of Covenants, Conditions and Restrictions, the supplements and amendments thereto and the articles and bylaws of the association.

125.    Each Defendant Board of Directors of each Owner's Association respectively breached its fiduciary duty of full disclosure owed to Plaintiffs and Class Members by causing a substandard accounting to occur which does not fully apprise Plaintiffs and Class Members of the underlying charges passed through to them by the so-called maintenance fee.

126.    Each Defendant Board of Directors breached its duty of loyalty to Plaintiffs and Class Members by causing these additional, unauthorized charges to be passed through to Plaintiffs and Class Members.

127.    Each Defendant Board of Directors is acquainted with each respective developer's financial relationships with vendors and suppliers, and has a self-serving financial relationship or otherwise personally profits from the decisions it makes in granting contracts to these vendors or suppliers, whether through salary, bonuses, perks, spiffs, commissions, gifts, or other compensation.

128.    Each Defendant Board of Directors is aware, or should be aware, that a fee of "Indirect Corporate Costs" is not a reasonable or appropriate fee to charge to owners on a pro rata basis, including to Plaintiffs and Class Members, as these costs have no relation to the benefit of the timeshare development.

129.   As fiduciary duties existed between Defendants and Plaintiffs and Class Members, Defendants breached a series of duties to Plaintiffs and Class Members to include the duties of loyalty, fidelity, honesty, candor, fair dealing and full disclosure.

130.   As a proximate result of these breaches, Plaintiffs and Class Members were financially injured by paying for fees unrelated to the timeshare development and unauthorized by its governing documents.

## COUNT III
### Professional Negligence
### As Against Defendant RSM US LLP

131.   Plaintiffs realleged and incorporate the allegations set forth in paragraphs 1 through 99 above as if set forth herein in full.

132.   Defendant Owner's Associations respectively retained Defendant RSM in connection with the audit of the budget, to include the items which were charged through to Plaintiffs and Class Members pursuant to a purported maintenance fee.

133.   RSM was acting in the course of its business, profession or employment while performing audits on the budgets provided to them by Defendants.

134.   RSM knew that the audited budgets would be supplied to Plaintiffs and Class Members, and other owners, in order to assess fees and charges to them for purported maintenance fee purposes.

135.   As such, Plaintiffs and Class Members and other owners were intended beneficiaries under the law and had near privity with RSM.

136.   RSM negligently supplied false information, by way of an inappropriate "Indirect Corporate Cost" included in the purported maintenance fees, to its respective client Boards of Directors of Defendants.

24

137.    Plaintiffs and Class Members justifiably relied upon this information as they were the intended beneficiaries of the audit and the audit was known by all parties to be used for communicating the fees and charges to be passed through to Plaintiffs and other owners through a so-called maintenance fee.

138.    Defendant RSM, by not exercising reasonable care or competence, caused false information to negligently pass to Plaintiffs and Class Members, which directly caused them injury in the amount of the pro rata share of charges of the "Indirect Corporate Cost" fee.

139.    As such, under Florida law and following the rationale of Restatement of Torts 2d §552, Defendant RSM is liable to Plaintiffs and Class Members for negligence in amounts equal to the amounts of the inappropriate fee charged, plus interest.

**COUNT IV**
**Breach of Contract**
**As Against All Defendants**

140.    Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 99 above as if set forth herein in full.

141.    Defendants intentionally misrepresented their yearly budget by inflating numbers and by disguising costs and passing them along to Plaintiffs and Class Members under the pretext of Maintenance Fees.

142.    Defendants know that "Resort Management" and/or "Indirect Corporate Costs" are not costs related to Maintenance Fees and cannot lawfully be passed to Plaintiffs and Class Members.

143.    Defendants know, or should have known, that the monies charged as Indirect Corporate Costs do not relate to the upkeep, repair, and operation of the unit nor any valid category specified in the Governing Documents.

25

144. Plaintiffs and Class Members and other Diamond timeshare owners, relying on Defendants' inaccurate annual budget, paid their Maintenance Fees owed each year, which included the line item Indirect Corporate Costs.

145. Defendants intended to induce Plaintiffs and Class Members to pay Defendants increased, unearned or otherwise unconscionable Maintenance Fees each year.

146. Defendants intended Plaintiffs and Class Members to pay increased fees so as to inure additional benefits to the management companies by way of the 15% fee calculation for compensation to the managing entities.

147. As a result of Plaintiffs' and Class Members' reliance on Defendants' fraudulent conduct, Plaintiffs and Class Members have suffered actual damages for each year that they have owned the timeshare interest subject to this fee.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A. Determining that this action is a proper class action, and certifying Plaintiffs as class representatives and the undersigned attorneys as class counsel pursuant to Rule 23(a), (b)(2), and (b)(3).

B. Holding Defendants liable to Plaintiffs and Class Members for damages in such amount as the court or jury may determine;

C. Awarding compensatory damages against Defendants in favor of Plaintiffs and Class Members for damages sustained as a result of Defendants' wrongdoing, together with interest thereon;

D. Judgment in favor of Plaintiffs and Class Members against Defendants for damages, in an amount to be determined at trial, caused by Defendants' conduct alleged herein;

E.      Judgment refunding Plaintiffs and Class Members the monies paid under the charge Indirect Corporate Costs allocated to Plaintiffs;

F.      Judgment declaring Defendants' conduct alleged herein as unlawful and enjoining Defendants from further such violations of the law;

G.      Judgment declaring Defendants must perform a third party audit and provide an accounting to Plaintiffs and Class Members;

H.      Awarding Plaintiffs and Class Members attorneys' fees and all litigation costs; and,

I.      Awarding Plaintiffs and Class Members such other equitable and legal relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand trial by jury of all issues so triable.

Dated: May 8, 2017

Respectfully submitted,

Michael D. Finn, Esq.
Florida Bar No. 0089029
Sean R. Kelly, Esq.
Florida Bar No. 0124404
**Finn Law Group, P.A.**
7431 114th Ave., Suite 104
Largo, Florida 33773
T: (727) 214-0700
F: (727) 475-1494
michaeldfinn@finnlawgroup.com
sean@finnlawgroup.com
pleadings@finnlawgroup.com

J. Andrew Meyer, Esq.
Florida Bar No. 0056766
**J. Andrew Meyer, P.A.**
15565 Gulf Boulevard
Redington Beach, Florida 33708
T: (727) 709-7668
andrew@jandrewmeyer.com

Shannon L. Zetrouer, Esq.
Fla. Bar No. 16237
**Westerman Zetrouer, P.A.**
146 2nd Street N. Ste. 100
St. Petersburg, Florida 33701
T: 727-329-8956
F: 727-329-8960
szetrouer@wwz-law.com

*Attorneys for the Plaintiffs and the Class*